Eastern District of Kentucky
FILED

NOV - 9 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 06-144-JMH

KEITH STEPPE,     PLAINTIFF

and

KENTUCKY FARM BUREAU
MUTUAL INSURANCE COMPANY,     INTERVENING PLAINTIFF

V.

WILLIAM CLEVERDON, JR., ET AL.,     DEFENDANTS

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This action arises out of a motor vehicle collision that occurred on or about February 2, 2006, at approximately 9:00 p.m., on or near the exit ramp at Versailles Road and New Circle Road, while both plaintiff's vehicle and defendants' vehicle, a semi-tractor trailer, were exiting the outer loop of New Circle Road onto the westbound lanes of Versailles Road in Lexington, Kentucky. The semi-tractor trailer being driven by defendant William Cleverdon, Jr. ("Cleverdon"), rear-ended plaintiff's vehicle.

On March 24, 2006, plaintiff Keith Steppe filed this action in Fayette Circuit Court, against defendants Cleverdon and his employer at that time, Chantler Transport, Inc. ("Chantler Transport"), alleging that Cleverdon, while acting within the course and scope of his employment as a commercial truck driver for defendant Chantler Transport, operated the semi-tractor trailer in a negligent manner without due care for the safety of others using the roadway, including plaintiff. Based on the allegation that Cleverdon was acting during the course and scope of his employment at the time of this motor vehicle collision, plaintiff also claims that the acts and omissions of defendant Cleverdon are imputed to his employer, Chantler Transport, under the theory of

*respondeat superior* liability. Plaintiff also alleges that based on the *respondeat superior* relationship between defendants Cleverdon and Chantler Transport, Chantler Transport was negligent in its duty towards plaintiff, including its duty to supervise, train, instruct, and hire safe commercial truck drivers who obey laws, rules, and regulations pertaining to the safety of others using the roadways, including the plaintiff.

Plaintiff seeks compensatory damages for bodily injuries sustained in this motor vehicle collision, past and future pain and suffering, mental anguish and inconvenience, past medical expenses, medical expenses plaintiff is likely to incur in the future, lost wages, the permanent impairment of his ability to earn money in the future, pre-judgment and post-judgment interest, and his costs and expenses.

On May 10, 2006, defendants removed this action from Fayette Circuit Court, pursuant to 28 U.S.C. § 1332, by reason of diversity of citizenship.

This matter is presently before the court on plaintiff's motion to compel the production of documents that were inadvertently disclosed to defendants' expert witness, Dr. Douglas Ruth. [DE #36]. The motion to compel has been fully briefed and is ripe for review.[1]

## II. PLAINTIFF'S MOTION TO COMPEL

### A. Factual background

Plaintiff's motion to compel concerns some of the documents that defendants provided to their expert, Dr. Douglas Ruth, a psychiatrist who was retained by the defendants to assess and to testify about plaintiff's mental/emotional state as it relates to the injuries and damages plaintiff allegedly sustained in the subject motor vehicle collision. In preparation for his assessment of the plaintiff, defendants' counsel provided Dr. Ruth with plaintiff's medical records and various other documents to assist Dr. Ruth in this evaluation. Subsequent to this evaluation, Dr. Ruth prepared

---

[1] Pursuant to numerical paragraph 1 of the district court's Scheduling Order entered herein on January 24, 2007, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #146].

2

a written report dated August 6, 2007, concerning his findings and conclusions as to plaintiff's mental/emotional state in question.

After defendants disclosed Dr. Ruth's written report to plaintiff, on September 4, 2007, plaintiff took Dr. Ruth's discovery deposition. The notice of Dr. Ruth's deposition included a subpoena duces tecum which required the deponent to: "bring all materials with which you were supplied, raw data and test results of any tests conducted as well as copies of all learned treatises upon which you primarily rely for expression of scientifically-based opinions." (Exhibit 2 (subpoena duces tecum) to plaintiff's Motion to Compel - [DE #36]). In compliance with the subpoena duces tecum, Dr. Ruth brought the materials requested to his deposition, and at the beginning of the deposition, plaintiff's counsel reviewed those documents briefly prior to questioning him. In the course of inspecting the documents Dr. Ruth had brought to the deposition, plaintiff's counsel noticed that Dr. Ruth's documents included items that had not been provided by the defendants' counsel in prior discovery disclosures, and plaintiff's counsel flagged those items that had not previously been produced.

At the conclusion of Dr. Ruth's deposition, plaintiff's counsel requested defendants' counsel to provide plaintiff with a copy of the flagged, previously unproduced documents. Defendants' counsel reviewed the flagged documents in question and declined to provide a copy of them to plaintiff, asserting (1) that they were exempt from production based upon attorney/client privilege and work product doctrine, and (2) that Dr. Ruth did not rely upon these privileged documents in forming his opinions.

**B.    The documents in dispute**

The documents in dispute consist of 59 pages of documents that defendants' counsel received from his client Chantler Transport in April of 2006.[2] In an affidavit filed as Exhibit B to defendants'

---

[2] Pursuant to the district court's Scheduling Order outlining the procedure to be followed in resolving a discovery dispute, prior to the filing of plaintiff's motion to compel, the Magistrate Judge conducted a telephone conference call with counsel and directed defendants' counsel to provide the 59 pages of documents in question to the Magistrate Judge for *in camera* review.
(continued...)

3

response in opposition to plaintiff's motion to compel the discovery of these 59 pages of documents, defendants' counsel, A. Spencer McKiness, describes in greater detail the nature of these documents and how these documents came to be provided to Dr. Ruth. This affidavit states, in pertinent part, as follows:

> 6. In April of 2006, I received documents from my client, Chantler Transport, Inc., regarding this litigation. This package of documents included but was not limited to all of 59 pages of the documents that are the subject of plaintiff's motion to compel.
>
> 7. Included in those 59 pages of documents are a background report on Keith Steppe, a letter from Chantler Transport, Inc. to Stites & Harbison PLLC, and other documents prepared in anticipation of litigation.
>
> 8. I copied all of the documents provided to me by Chantler Transport, Inc., except for those I determined to be protected by either the work product doctrine or attorney-client privilege.
>
> 9. A paralegal in my office affixed an identification number to the copied documents to signify that those documents were suitable for production.
>
> 10. Copies of the screened and numbered documents were provided to Mr. Steppe's attorney during our Rule 26 conference on or about October 10, 2006.
>
> 11. The original documents received from Chantler and the screened and numbered documents prepared for disclosure to plaintiff were kept in one red weld file.
>
> 12. I retained three witnesses to serve as experts in this litigation, including Barry Raftery, Dr. George Nichols, and Dr. Douglas Ruth.
>
> 13. I contacted Dr. Ruth on or about July 12, 2007.
>
> 14. On or about July 17, 2007, I agreed to send him documents through the mail to assist him in his evaluation of Keith Steppe.
>
> 15. I intended to send Dr. Ruth all documents produced to me by Mr. Steppe's attorney, all the screened and numbered documents that I provided to Mr. Steppe's attorney in October 2006, Mr. Steppe's answers to interrogatories, and Mr. Steppe's employment records.
>
> 16. I mistakenly retrieved the original documents provided to me by Chantler instead of the screened and numbered copies previously provided to Mr. Steppe's attorney.
>
> 17. The documents were given to staff at my office to copy and send to Dr. Ruth.
>
> 18. I did not review the documents again before they were mailed to Dr. Ruth.

---

(...continued)
The Magistrate Judge has conducted an *in camera* review of the disputed documents.

>19. None of the other witnesses that I retained were sent the unscreened, unnumbered documents inadvertently sent to Dr. Ruth.

Affidavit of A. Spencer McKiness, pp. 2-3 - Exhibit B to Defendants' Memorandum Opposing Plaintiff's Motion to Compel Production of Privileged and Work-Product Documents Inadvertently Sent to Expert Witness [DE #38].

Thus, based on the foregoing affidavit of Mr. McKiness, it appears (1) that both the original, unnumbered documents that had been sent to Mr. McKiness by his client, defendant Chantler Transport, and a copy of the documents that had been screened and numbered for document production were maintained by Mr. McKiness in the same red weld file, (2) that when gathering documents to provide to Dr. Ruth, Mr. McKiness mistakenly retrieved the original, unnumbered documents that had been sent to him by his client, Chantler Transport, which included the 59 pages of the documents in question which defendants assert are privileged, when he intended to retrieve from the red weld the documents that had been screened and numbered for production, (3) that the original, unnumbered documents were copied by staff, at the request of Mr. McKiness, and sent to Dr. Ruth, (4) that prior to their being sent to Dr. Ruth, Mr. McKiness did not review the documents that had been copied to be sent to Dr. Ruth, (5) that Mr. McKiness was unaware that the original, unnumbered documents had been sent to Dr. Ruth until this matter came to his attention at Dr. Ruth's deposition when, upon plaintiff's counsel's review of the documents Dr. Ruth had brought with him to the deposition, in compliance with the subpoena duces tecum, she flagged and requested a copy of these unnumbered documents, which were documents that defendants had not previously provided to plaintiff, and (6) that Mr. McKiness objected to their production to plaintiff on the grounds that they were privileged documents that had been inadvertently sent to Dr. Ruth.

## Discussion/Analysis

As grounds for his motion to compel the production of the 59 pages of documents in question, plaintiff contends that since defendants' counsel provided these documents to Dr. Ruth and that since Dr. Ruth stated that he reviewed these documents, even though Dr. Ruth stated that he did not rely on these 59 pages of documents in forming the opinions contained in his report about the

5

plaintiff, he is entitled to the production of these documents, regardless of their privileged status, because these documents had been reviewed by Dr. Ruth during the course of his assessment of the plaintiff. In support of this argument, plaintiff relies on *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006), which plaintiff asserts created a bright-line rule in the Sixth Circuit that a party is entitled to all documents that have been reviewed by an opposing party's expert, regardless of whether the expert relied on these documents in forming his opinions. Plaintiff submits that "all" means "all" and that there should be no exception for privileged documents that may have been inadvertently provided to a party's expert.

In response, defendants disagree that *Regional Airport Authority* is controlling in this particular situation and assert that based on the facts of this particular case, the privileged documents in question did not lose their protected status because they were *inadvertently* disclosed to an expert witness, and that it is this "inadvertent disclosure" which distinguishes this case from *Regional Airport Authority* and exempts it from the rule established by the Sixth Circuit in that case. In support of their argument that privileged documents do not necessarily lose their protected status upon "inadvertent disclosure," defendants rely on *mySimon Property Group, L.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind. 2000), and *McCauley v. Nucor Corp.*, 2006 U.S. Dist. LEXIS 70748 (S.D. Ind. 2006).

The two cases on which defendants rely are from the United States District Court for the Southern District of Indiana. In *Simon Property Group, L.P. v. mySimon, Inc., supra*, counsel for mySimon, Inc. (hereafter "mySimon") prepared and sent a package of materials to its damages expert to review in developing her opinions on damages. mySimon's counsel reviewed the documents to be sent to the damages expert, but did not notice that included in that package of documents were four documents that were protected by both the attorney/client privilege and the work product doctrine, and these four privileged documents were inadvertently sent to mySimon's damages expert. Subsequently, after mySimon's damages expert had prepared her report, counsel for Simon Property Group (hereafter "SPG") contacted mySimon's counsel and requested a copy of all documents listed

6

on the exhibit to the report of the damages expert itemizing the documents the damages expert had reviewed prior to preparing her report. It was not until mySimon's counsel received SPG's request for production of the documents reviewed by its damages expert that mySimon's counsel realized that four privileged documents had inadvertently been provided to its damages expert.

In response to SPG's request, mySimon's counsel produced all the documents which its damages expert identified that she had reviewed prior to preparing her report except for the four documents which mySimon asserted were protected by the attorney/client and work product privileges, which resulted in a motion by SPG to compel mySimon to produce the four privileged documents in question. As grounds for the motion to compel, SPG asserted that these four documents lost their protected status when mySimon provided them to its damages expert. In reply, mySimon argued that since the disclosure was inadvertent, it should not be deemed a waiver of either the attorney/client or work product privileges.

In considering this matter, the court in *Simon Property Group* noted that neither the Seventh Circuit nor the United States Supreme Court had addressed directly the issue of waiver by inadvertent disclosure and that the federal courts have been divided, at least since the 1993 amendments to Rule 26, on the issue of waiver by inadvertent disclosure. On this issue, the court in *Simon Property Group* reviewed *dicta* from *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122 (7th Cir. 1997), and found it most instructive, explaining, as follows:

> The general discussion in *Dellwood Farms* is consistent with this court's earlier treatment of an inadvertent disclosure of a privileged attorney-client communication in *Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 386-90 (S.D.Ind.1997) (finding waiver); see also *In re Recombinant DNA Technology Patent and Contract Litigation,* 30 U.S.P.Q.2d 1881, 1906-07 (S.D.Ind. March 22, 1994) (Dillin, J.) (reviewing case law and finding waiver under balancing approach). In *Draus*, the court reviewed the three principal approaches to inadvertent disclosures of privileged documents.
>
> The first might be termed the strict liability approach, so that any non-privileged disclosure, no matter how slight and no matter to whom, forfeits the privilege. See, *e.g., In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989); F.D.I.C. v. Singh, 140 F.R.D. 252, 253 (D.Me.1992). A second is the subjective intent approach, so that only a deliberate disclosure forfeits the privilege. See, *e.g., Helman v. Murry's Steaks, Inc.,* 728 F.Supp. 1099, 1104 (D.Del.1990); *Mendenhall v. Barber-Greene Co.,* 531 F.Supp. 951, 954 (N.D.Ill.1982). The third might be called

7

the skeptical balancing approach, in which the court considers all the relevant circumstances, including (1) the reasonableness of precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery, when the disclosure occurs in that context; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." See *Draus,* 172 F.R.D. at 387, citing *Alldread v. City of Grenada,* 988 F.2d 1425, 1435 (5th Cir.1993); Bud Antle, Inc. v. Grow-Tech Inc., 131 F.R.D. 179, 183 (N.D.Cal.1990); Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204, 208-09 (N.D.Ind.1990) (reviewing case law and rejecting subjective approach).[FN2]

> FN2. This third approach might be called "skeptical" because there are limits as to how far the courts should go to rescue a party from its own carelessness, at least when there is any serious prospect that doing so would impose any harm or prejudice to the opponent. See *In re Recombinant DNA Litigation,* 30 U.S.P.Q.2d at 1910 ("Moreover, in fairness to all involved in the litigation, there is a certain point past which the Court should not intervene to rectify the mistakes of a party or that party's counsel.").

*mySimon, Inc.,* 194 F.R.D. at 648.

In the final analysis, the court in *Simon Property Group* adopted the third approach, the balancing approach, under which to determine whether waiver by inadvertent disclosure had occurred. Explaining the rationale for that decision, the *Simon Property Group* court stated:

> . . . That approach is most consistent with the Seventh Circuit's discussion in *Dellwood Farms,* and it is consistent with Indiana privilege law as set forth in *JWP Zack.* The balancing approach recognizes that the problem of inadvertent disclosure can arise in many variations. Some disclosures may be truly harmless, such as where a privileged document is disclosed only constructively or minimally to a third party, as when the third party merely glanced at a document, or marked it for copying without reading it, or merely had access to a file cabinet containing it but did not actually read it.

*Id.,* at 648-49.

Viewing the inadvertent disclosure that occurred in *Simon Property Group,* under the balancing approach, the *Simon Property Group* court concluded that the inadvertent disclosure in that case did not operate to waive the privilege protecting the disclosure of the four documents at issue.

Subsequently, the issue of waiver by inadvertent disclosure was revisited by a district court in the Seventh Circuit in *McCauley v. Nucor,* 2006 U.S. Dist. LEXIS 70748 (S.D. Ind. 2006). In *McCauley,* plaintiffs inadvertently disclosed a privileged document to their expert, withheld

8

production of that document to the defendant because it was a privileged document, and the defendant moved to compel the production of that document on the grounds that waiver of the privilege had occurred by the inadvertent disclosure. The trial court denied the motion to compel finding that the inadvertent disclosure in that case did not waive the privilege, for the reasons explained below by the *McCauley* court:

> Inadvertent disclosure of otherwise protected material may subject that information to disclosure under certain circumstances. *Simon Property Group v. mySimon, Inc.*, 194 F.R.D. 644, 647-50 (S.D. Ind. 2000). The much-cited balancing approach discussed in *Simon Property Group* is appropriate in resolving the matter at hand. This approach requires the Court to assess whether: (1) the neglect that led to the inadvertent disclosure was excusable; (2) it is possible to provide effective relief from the inadvertent disclosure; and (3) there is any serious prospect of harm to the interests of the opponent or the interests of justice if waiver is not found. *Id. at 650.* The Court remains mindful that "a truly harmless mistake is not a compelling reason for stripping a person of a privilege." *Id. at 648 (citing Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d 1122, 1127 (7th Cir. 1997).*

*McCauley, supra*, at *3-4.

If the situation in the present action were viewed solely from the perspective of *Simon Property Group* and *McCauley*, both of which concern virtually identical factual situations where a party inadvertently disclosed privileged documents to that party's expert, the court in this instance would be inclined (1) to follow the rationale of these two cases, which are persuasive, but not controlling, decisions by sister district courts in Southern District of Indiana, and (2) to apply the balancing approach and find that the inadvertent disclosure in this case did not operate to strip the documents at issue of their privileged status. However, the full consideration of this matter also requires an examination of *Regional Airport Authority*, which is primary authority from the Sixth Circuit.

In *Regional Airport Authority*, plaintiff Regional Airport Authority of Louisville and Jefferson County filed a CERCLA[3] action against LFG, LLC and Navistar International Transportation Corporation for costs plaintiff allegedly incurred in the remediation of property

---

[3] "CERCLA" is an acronym for Comprehensive Environmental Response, Compensation, and Liability Act.

9

previously owned by the defendants. In the discovery process, plaintiff provided its testifying experts with 151 documents that it declined to disclose to the defendants on the grounds that the documents were protected by the work product doctrine. Defendants moved to compel the production of those 151 documents, arguing that, irrespective of the privileged status of these documents, under Rule 26 of the Federal Rules of Civil Procedure, as amended in 1993, plaintiff was required to produce all information considered by its experts in forming their opinions. The district court granted the motion to compel.

Plaintiff appealed. In considering this matter on appeal, the Sixth Circuit noted that subsequent to the amendments to the Federal Rules of Civil Procedure in 1993, two lines of cases had formed regarding the discovery of privileged documents provided to experts and that this issue was one of first impression in the Sixth Circuit. Elaborating, the Sixth Circuit explained:

> Since the amendments, two lines of cases have formed regarding protections of work-product associated with those experts. The first holds that attorney work product is not discoverable merely because it has been shared with a testifying expert. *See Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 292-96 (W.D. Mich.1995); *see also Smith v. Transducer Tech., Inc.*, 197 F.R.D. 260, 261-62 (D.V.I. 2000); *Krisa v. Equitable Life Assurance Soc'y*, 196 F.R.D. 254, 259-61 (M.D. Pa. 2000); *Estate of Moore v. R.J. Reynolds Tobacco Co.*, 194 F.R.D. 659, 663-64 (S.D. Iowa 2000). The second holds that Rule 26 creates a bright-line rule requiring disclosure of all information provided to testifying experts, including attorney opinion work product. *See In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 637-41 (N.D. Ind.1996); *Gall v. Jamison (In re Gall)*, 44 P.3d 233, 238-39 (Colo. 2002); *cf. Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (noting that Rule 26(a)(2)(B) requires a party to disclose all data that a testifying expert "considered"). The issue is one of first impression in this Court.
>
> The first line-the so-called *Haworth* line-represents the minority view. The *Haworth* court felt that the amendments to Rule 26 did not change the pre-amendment rule that attorney opinion work product disclosures to experts were privileged from discovery. Relying largely on the Supreme Court's decision in *Hickman,* the *Haworth* court stated, "For the high privilege accorded attorney opinion work product not to apply would require clear and unambiguous language in a statute." *Haworth,* 162 F.R.D. at 295. Finding no such language in Rule 26, the court followed pre-amendment Sixth Circuit precedent that attorney opinion work product is absolutely privileged. *Id.* (citing *Toledo Edison,* 847 F.2d at 340).
>
> The contrary view-adopted by a majority of courts that have considered the issue, including the only court of appeals to have done so-relies mostly on statements in the Advisory Committee Notes in holding that Rule 26 as amended creates a bright-line

> rule requiring disclosure of all information provided to testifying experts. *See In re Pioneer,* 238 F.3d at 1375.
>
> The district court adopted the majority view in holding that all materials the Authority provided to its testifying experts must be disclosed to Defendants.

460 F.3d at 714.

Ultimately, the Sixth Circuit affirmed the district court's decision requiring disclosure of the privileged documents the Authority gave to its experts. The rationale underlying the Sixth Circuit's decision is set out below:

> We agree with the district court and the majority view that Rule 26 now requires disclosure of all information provided to testifying experts. A plain reading of subsections (a)(2) and (b) makes clear that (b) applies to the *discovery* of information provided to experts generally, while (a)(2) applies to the *disclosure* of information provided to testifying experts specifically. . . .
>
> . . .
>
> Having concluded that Rule 26(a)(2) mandates disclosure regarding testifying experts, we must now determine the extent of the required disclosure. The Authority argues that Defendants were entitled only to the facts known or relied upon by the Authority's testifying experts. We disagree. Rule 26(a)(2)(B) requires parties to provide "a complete statement of ... the data *or other information* considered by the witness" (emphasis added). Had the drafters intended to require disclosure of facts only, they would not have needed to include the phrase "or other information." In fact, reading the rule as requiring disclosure of only facts would render those words surplusage, a result we are to avoid whenever possible. *See Ratzlaf v. United States,* 510 U.S. 135, 140, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994); *Perry,* 360 F.3d at 537; *Mitchell v. Chapman,* 343 F.3d 811, 825 (6th Cir.2003) ("'Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" (quoting *Lake Cumberland Trust, Inc. v. EPA,* 954 F.2d 1218, 1222 (6th Cir.1992))). Thus, we read this provision to require disclosure of more than facts.
>
> It is unclear from the text alone the extent of the required disclosure. The Advisory Committee Notes are equally ambiguous: "Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts ... are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Since neither the text of the Rule nor the Advisory Committee Notes places any qualifier as to the extent of the "information," Fed.R.Civ.P. 26(a)(2)(B), or "materials," Fed.R.Civ.P. 26, advisory committee note, 1993 amendments, given to testifying experts, we must conclude that none was intended. Thus, we read Rule 26(a)(2) as requiring disclosure of *all* information provided to testifying experts.
>
> The bright-line approach is the majority rule, represents the most natural reading of Rule 26, and finds strong support in the Advisory Committee Notes. Therefore, we

>  now join the "overwhelming majority" of courts, *Herman v. Marine Midland Bank,* 207 F.R.D. 26, 29 (W.D.N.Y.2002), in holding that Rule 26 creates a bright-line rule that Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts. mandating disclosure of all documents, including attorney opinion work product, given to testifying experts. Accordingly, we affirm the order of the district court. (all emphasis in original).

460 F.3d at 715-16.

In the absence of *Regional Airport Authority*, the Magistrate Judge would be persuaded by defendants' argument that the *inadvertent* disclosure in the present action should not strip the documents in question of their privileged status, as two sister district courts in the Southern District of Indiana held in *mySimon Property Group, L.P. v. mySimon, Inc.*, 194 F.R.D. 644 (S.D. Ind. 2000), and *McCauley v. Nucor Corp.*, 2006 U.S. Dist. LEXIS 70748 (S.D. Ind. 2006). However, in view of *Regional Airport Authority*, the Magistrate Judge concludes that plaintiff's argument should carry the day. In *Regional Airport Authority*, the Sixth Circuit made no distinction between privileged documents that had been *intentionally provided* to an expert and privileged documents that had been *inadvertently provided* to an expert and simply held "that Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts." *Id.* Arguably, in arriving at its decision in *Regional Airport Authority*, the Sixth Circuit could have carved out an exception for privileged documents that were *inadvertently provided* to an expert, similar to the district court's holding in *Simon Property Group*, which was decided in 2000, prior to *Regional Airport Authority*; however, for whatever reason the Sixth Circuit, in fashioning the bright-line rule announced in *Regional Airport Authority* elected not to make that distinction.

Additionally, it is also clear from *Regional Airport Authority* that it makes no difference whether the expert considered these documents in forming his opinions. *Regional Airport Authority* teaches that all information provided to a testifying expert, including attorney opinion and work product, must be disclosed, regardless of whether the expert considered or relied on this information in forming his opinions. "Thus, we read Rule 26(a)(2) as requiring disclosure of *all* information provided to testifying experts." (emphasis in original). 460 F.3d at 716. As plaintiff succinctly

12

stated, "'all' means 'all'." Plaintiff's Motion and Supporting Memorandum to Compel Disclosure of Documents Provided to Expert Witness, p. 4 [DE #36].

Consequently, even though the expert may not have considered or relied on the privileged documents in forming his opinions, under the rule of *Regional Airport Authority*, the privileged documents must be disclosed to the opposing party.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The 59 pages of Bates-stamped documents which are the subject of plaintiff's motion to compel and which defendants have provided to the Magistrate Judge for *in camera* review **SHALL BE FILED UNDER SEAL**.

2. Plaintiff's motion to compel the production of documents that were inadvertently disclosed to defendants' expert witness, Dr. Douglas Ruth [DE #36] is **GRANTED**.

3. In the absence of any objections made to this Memorandum Opinion and Order, defendants are directed to produce the 59 pages of privileged documents at issue to the plaintiff forthwith.

This 9th day of November, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE